

**U.S. Department of Justice**

United States Attorney
District of New Jersey
*Civil Division*

---

CRAIG CARPENITO
UNITED STATES ATTORNEY

David E. Dauenheimer
*Assistant United States Attorney*
*Deputy Chief, Civil Division*

970 Broad Street, Suite 700
*Newark, NJ 07102*
<u>david.dauenheimer2@usdoj.gov</u>

main: (973) 645-2700
direct:(973) 645-2925
fax:   (973) 297-2010

January 30, 2018

<u>**VIA ECF**</u>
Honorable Kevin McNulty
United States District Judge
U.S. Post Office & Courthouse
Federal Square
Newark, New Jersey 07101

> Re:   *Ravidath Ragbir v. United States of America,*
>        <u>Civil Action No. 2:17-cv-1256 (KM)</u>

Dear Judge McNulty:

This letter is to apprise the Court of a decision in an analogous matter issued yesterday by Judge Linares in *Fermin v. United States*, 17-cv-01862 (JLL)(D.N.J. Jan. 29, 2018), Dkt. No. 15, and a decision in Petitioner's habeas application from Judge Forrest in the Southern District of New York, *Ragbir v. Sessions et al.*, 18-cv-236 (KBF)(S.D.N.Y. Jan. 29, 2018), Dkt. No. 48 (attached hereto as Exs. 1 and 2).

In *Fermin*, the Petitioner, an alien subject to removal, filed a *coram nobis* petition relying on *Padilla v. United States*, 559 U.S. 356 (2010) and arguing that he was entitled to relief from his conviction because his counsel did not inform him of the consequences of his guilty plea. *See* Ex. 1 at 4. While that petition was pending and after being detained by Immigration and Customs Enforcement, Petitioner filed an emergency motion seeking a stay of his removal. *Id.* at 6. Judge Linares' decision denied both requests, finding Petitioner's *Padilla* claim was foreclosed by *Chaidez v. United States*, 568 U.S. 342 (2013), and that the Court lacked jurisdiction to stay Petitioner's removal because "any challenge to the validity of that removal order or request for a stay of that order could be entertained only by the Court of Appeals, not this Court." *Id.* at 5-6 (internal quotations and citation omitted).

In *Ragbir v. Sessions et al.* Judge Forrest issued an opinion granting Petitioner's habeas request and ordering him released from custody.  *See* Ex. 2 at 7. Petitioner was released under an order of supervision requiring him to report in person to the Deportation Officer at Federal Plaza in New York City on February 10, 2018, for removal.  *See* Ex. 3 - Ragbir Forms 220B and G-56.

                              Respectfully submitted,

                              CRAIG CARPENITO
                              United States Attorney

                     By:     s/ David E. Dauenheimer
                              DAVID E. DAUENHEIMER
                              Assistant United States Attorney

cc:     R. Scott Thompson, counsel for Petitioner (via ECF)

# Exhibit 1

NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS FERMIN, | Civil Action No. 17-1862 (JLL) |
| Petitioner, | |
| v. | **OPINION** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**LINARES**, Chief District Judge:

Presently before the Court is the petition for a writ of error *coram nobis* filed by Carlos Fermin ("Petitioner") challenging Petitioner's 2007 conviction. (ECF No. 1)  Respondent, United States of America ("Respondent" or "Government"), filed a response to the petition, (ECF No. 9), to which Petitioner replied, (ECF No. 10).   Also before the Court is Petitioner's emergency motion seeking a stay of his final order of removal, (ECF No. 13), to which the Government has responded, (ECF No. 14).   For the following reasons, the Court will deny both the petition and the emergency motion.

**I.  BACKGROUND**

On November 18, 2003, Petitioner pled guilty to one count of possession with intent to distribute more than fifty grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), before Judge Hochberg.   On May 3, 2007, Judge Hochberg sentenced Petitioner to time served and a period of supervised release of sixty months.   (Docket No. 03-815 at ECF No. 16).

Petitioner did not appeal. (Docket No. 03-815).

On July 27, 2016, following a traffic stop, Petitioner was taken into immigration detention and placed into removal proceedings based on his prior conviction. (ECF No. 9-1 at 8). On January 10, 2017, an immigration judge ordered Petitioner removed. (ECF No. 14-1 at 12–20). Petitioner appealed, and the Board of Immigration Appeals affirmed his order of removal and dismissed his appeal on May 3, 2017. (*Id.* at 24). While that appeal was pending, Petitioner was released on bond following an Order of this Court directing an immigration judge to conduct a bond hearing for Petitioner. (*Id.* at 26). Because Petitioner is now subject to a final order of removal, however, Petitioner was taken back into immigration custody on January 18, 2018. (*Id.* at 8). The Government is now attempting to remove Petitioner to his home country, the Dominican Republic. (*Id.*).

On or about March 16, 2017, nearly ten years after his judgment of conviction became final, Petitioner filed his current petition for a writ of error *coram nobis*. (ECF No. 1). In his petition, Petitioner essentially argues that his plea attorney failed to advise him of the immigration consequences of his plea, that he would not have pled guilty had he been informed of those consequences, and that he therefore should be permitted to withdraw his plea due to ineffective assistance of counsel. (*Id.*). Following briefing in this matter and Petitioner being arrested by immigration officials in January 2018, Petitioner also filed an "emergency motion" seeking a stay of his final removal order. (ECF No. 13). In his "emergency motion," Defendant asserts that his Due Process rights will be violated if Petitioner is removed before he has an opportunity to testify in any hearing this Court might deem necessary for the resolution of this matter. (*Id.*).

2

## II. <u>DISCUSSION</u>

### A. Legal Standard

A petitioner who has completed his sentence and is no longer in custody pursuant to his judgment of conviction, but who continues to suffer collateral consequences from his conviction, may seek to challenge his conviction through a petition for a writ of error *coram nobis*. *United States v. Biondi*, 600 F. App'x 45, 46 (3d Cir. 2015); *see also Mendoza v. United States*, 690 F.3d 157, 159 (3d Cir. 2012); *United States v. Stoneman*, 870 F.2d 102, 105-06 (3d Cir. 1989). A writ of error *coram nobis*, however, "is an 'infrequent' and 'extraordinary' form of relief that is reserved for 'exceptional circumstances.'" *United States v. Babalola*, 248 F. App'x 409, 411 (3d Cir. 2007) (quoting *Stoneman*, 870 F.2d at 106); *see also Mendoza*, 690 F.3d at 159. Indeed, the Supreme Court has observed that the granting of a writ of error *coram nobis* is so extreme a remedy that it "is difficult to conceive of a situation in a federal criminal case today where [*coram nobis* relief] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996).

As the Third Circuit has explained,

> Because of the strong interest in finality of judgments, the standard for a collateral attack on a conviction via a writ of error *coram nobis* is more stringent than the standard applicable on a direct appeal. Indeed, because a defendant seeking *coram nobis* relief has already completed her sentence, the interests in favor of revisiting the judgment are even less than in the habeas context, where the petitioner is still "in custody." Thus, only where there are errors of fact of the *most fundamental kind*, that is, such as to render the proceeding itself irregular and invalid . . . can redress be had, and relief will be granted only when circumstances compel such action to achieve justice. Despite this heavy burden, both the Supreme Court and [the Third Circuit] have reaffirmed the continued existence of *coram nobis* relief in the appropriate circumstances.
>
> In addition to the cardinal requirement for issuance of the

3

> writ that errors of . . . the most fundamental kind had infected the proceedings, this court has articulated several other threshold considerations to *coram nobis* relief. A *coram nobis* petitioner must also show that (1) he is suffering from continuing consequences of the allegedly invalid conviction, (2) there was no remedy available at the time of trial, and that (3) sound reasons exist for failing to seek relief earlier. Of course, earlier proceedings are presumptively correct and the petitioner bears the burden to show otherwise.

*Babalola*, 248 F. App'x at 411–12 (internal quotations and citations omitted); *see also Stoneman*, 870 F.2d at 106, *United States v. Osser*, 864 F.2d 1056, 1059–62. Failure to establish any of the above elements will defeat a petition for *coram nobis* relief, and the "sound reasons" standard requires an even greater showing of entitlement to relief than that required in a § 2255 *habeas* proceeding. *Mendoza*, 690 F.3d at 159; *Stoneman*, 870 F.2d at 106.

## B. Analysis

In this matter, Petitioner argues that he should be entitled to relief from his criminal conviction because his counsel did not inform him of the immigration consequences of his guilty plea, despite requests to discuss that information, and thus Petitioner did not know at the time he pled guilty that he would be subject to removal from the United States on the basis of his guilty plea. As Petitioner has now been ordered removed from the United States on the basis of his prior conviction, it is certainly clear that Petitioner continues to suffer a continuing consequence from his guilty plea. What Petitioner cannot show, however, is that he is entitled to *coram nobis* relief, because his Petition is based on a flawed premise—that the Supreme Court's ruling in *Padilla v. Kentucky*, 559 U.S. 356 (2010) (holding that counsel's failure to advise a petitioner or affirmative misadvice as to the immigration consequences of a guilty plea amounts to ineffective assistance of counsel), is retroactively applicable to this collateral proceeding.

4

Although Petitioner did not cite to *Padilla* in his initial petition, the claim Petitioner is attempting to raise in this matter—that counsel was constitutionally ineffective in failing to advise him as to the immigration consequences of his plea—was first recognized by the Supreme Court in *Padilla*. 559 U.S. at 368-71. Because the claim Petitioner seeks to raise was recognized in 2010, several years after Petitioner's conviction became final in 2007, Petitioner could only be entitled to relief under *Padilla* if that case were retroactively applicable to cases on collateral review. In his reply brief, Petitioner therefore argues that he is entitled to relief under *Padilla* because the Third Circuit held *Padilla* to be retroactively applicable in *United States v. Orocio*, 645 F.3d 630 (3d Cir. 2011), *abrogated by Chaidez v. United States*, 568 U.S. 342 (2013). Although the Third Circuit in *Orocio* did find that *Padilla* was retroactive, it did so by determining that *Padilla* had not announced a new rule of law. *Id.* at 641. As the Third Circuit noted in *Mendoza*, however, "if the Supreme Court were to overrule *Orocio* and conclude that *Padilla* did, in fact, create a 'new rule,' such a ruling . . . would . . . preclude [*coram nobis* petitioners] from invoking *Padilla* retroactively, effectively foreclosing [such a] claim." 690 F.3d at 160 n. 1.

This is, in fact, precisely what the Supreme Court did in *Chaidez*, 568 U.S. at 358. As the *Chaidez* Court explained, the Supreme Court "announced a new rule in *Padilla*" and "defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Id.* The Supreme Court thus directly abrogated the holding in *Orocio* on which Petitioner now seeks to rely. *Id.* Because Petitioner seeks relief from his conviction pursuant to a *Padilla* claim, and because *Padilla* does not apply retroactively, regardless of the abrogated holding of *Orocio*, Petitioner cannot benefit from *Padilla*. Petitioner thus cannot show that he is entitled to relief as the claim he seeks to raise is foreclosed. Petitioner's *coram nobis* petition must therefore be

5

denied.

In addition to his *coram nobis* petition, Petitioner in this matter has also filed an "emergency motion" seeking a stay of his final order of removal, arguing that his presence may be required for a hearing in this matter, and that his removal before this matter is concluded might violate his rights under the Due Process Clause of the Fifth Amendment.   Initially, the Court notes that, because Petitioner's claim is clearly foreclosed by *Chaidez*, he is not entitled to relief and no hearing is therefore necessary to resolve this matter.   Even were this not the case, however, this Court cannot grant Petitioner the relief he seeks because this Court has no jurisdiction to stay a final order of removal.   *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g); *K.A. v. Green*, No. 17-3542, 2017 WL 5513685, at *3 (D.N.J. Nov. 16, 2017).   Indeed, because Petitioner has received a final order of removal, any challenge to the validity of that removal order or request for a stay of that Order "could be entertained only by the Court of Appeals, not this Court."   *Grosset v. Muller*, No. 13-654, 2013 WL 6582944, at *4 n. 5 (D.N.J. Dec. 13, 2013).   Petitioner's emergency motion must therefore be denied.[1]

---

[1] The Court need not transfer the motion to the Court of Appeals because a transfer is not in the interests of justice insomuch as Petitioner could not show his entitlement to a stay of removal based on his *Padilla* claim as that claim is foreclosed by *Chaidez* and Petitioner therefore cannot show that he is likely to succeed on the merits.   *See Nken v. Holder*, 556 U.S. 418, 426-36 (2009); *Douglas v. Ashcroft*, 374 F.3d 230, 234 (3d Cir. 2004).

## III.   <u>CONCLUSION</u>

For the aforementioned reasons, Petitioner's petition for a writ of error *coram nobis* is DENIED and Petitioner's motion for emergency relief is also DENIED.   An appropriate order follows.

Date: January _29_ , 2018

JOSE L. LINARES,
Chief Judge, United States District Court

7

# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

RAVIDATH LAWRENCE RAGBIR,

Petitioner,

-v-

JEFFERSON SESSIONS III, in his official
capacity as the Attorney General of the United
States, KIRSTJEN NIELSEN, in her official
capacity as Secretary of Homeland Security,
THOMAS DECKER, in his official capacity as
New York Field Office Director for U.S.
Immigration and Customs Enforcement,
SCOTT MECHKOWSKI, in his official capacity
as Assistant New York Field Office Director for
U.S. Immigration and Customs Enforcement,
and the U.S. DEPARTMENT OF HOMELAND
SECURITY,

Respondents.

------------------------------------------------------------ X

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: January 29, 2018 |

18-cv-236 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

There is, and ought to be in this great country, the freedom to say goodbye.

That is, the freedom to hug one's spouse and children, the freedom to organize the

myriad of human affairs that collect over time. It ought not to be—and it has never

before been—that those who have lived without incident in this country for years

are subjected to treatment we associate with regimes we revile as unjust, regimes

where those who have long lived in a country may be taken without notice from

streets, home, and work. And sent away. We are not that country; and woe be the

day that we become that country under a fiction that laws allow it. We have a law

higher than any that may be so interpreted—and that is our Constitution. The

wisdom of our Founders is evident in the document that demands and requires

more; before the deprivation of liberty, there is due process; and an aversion to acts that are unnecessarily cruel. These fundamental rights are at issue in this case.[1]

After having spent nine years in this country without incident, reporting as required to immigration authorities and building a home, a family,[2] and a community, on January 11, 2018, Ravidath Ragbir[3] was suddenly taken into custody. He was informed that his time in this country was at an end; without further ado, without the freedom to say goodbye, he was taken away. This abrupt and by all accounts unnecessary detention, a step in the direction of deportation, was wrong. To be sure, there is a complicated statutory scheme that has been written in so many different voices and with so many agendas that it is now akin to a corn maze. That scheme, read as the Government here reads it, allows for precisely those acts that occurred on January 11, 2018. Under that reading, petitioner's status was essentially always at will and subject to immediate revocation if a mysterious "travel document" was obtained.[4] How and when said

---

[1] The Court also notes with grave concern the argument that petitioner has been targeted as a result of his speech and political advocacy on behalf of immigrants' rights and social justice. "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." United States v. Alvarez, 579 U.S. 709, 716 (2012) (quoting Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 573 (2002) (internal quotation marks omitted)).

[2] Mr. Ragbir is married to a United States citizen and also has a child born in this country.

[3] Ravidath "Ravi" Lawrence Ragbir is an immigrant who came to the United States from Trinidad and became a Legal Permanent Resident in 1994. Prior to detention, Mr. Ragbir lived in Brooklyn, New York, with his wife and daughter, both of whom are American citizens. He is the Executive Director of the New Sanctuary Coalition of New York City, sits on the Steering Committee of the New York State Interfaith Network for Immigration Reform, and has served as the Chair of the Board of Families for Freedom.

[4] This Court notes that the travel document at issue expired by its terms on January 14, 2018. In other words, the circumstances that were "changed" and that had allowed for the revocation of supervised release, have now "changed back." Moreover, it appears from the record (various ICE worksheets) that a travel document has been easily obtainable for years, rendering receipt of such a document as the basis for "changed circumstances" fictive.

2

document would be sought, let alone obtained, is unclear. Here, petitioner was never told that such a document had been applied for and, unless the process requires many years to complete, such document had not been sought for over a decade. In short, petitioner had no reason to suspect that this meeting on January 11, 2018 would result, as it did, in his immediate and abrupt detention.

The Court in fact agrees with the Government that the statutory scheme—when one picks the path through the thicket in the corn maze—allows them to do what was done here. But there are times when statutory schemes may be implemented in ways that tread on rights that are larger, more fundamental. Rights that define who we are as a country, what we demand of ourselves, and what we have guaranteed to each other: our constitutional rights. That has occurred here.

In sum, the Court finds that when this country allowed petitioner to become a part of our community fabric, allowed him to build a life with and among us and to enjoy the liberties and freedom that come with that, it committed itself to allowance of an orderly departure when the time came, and it committed itself to avoidance of unnecessary cruelty when the time came. By denying petitioner these rights, the Government has acted wrongly. The petition must and shall be granted.

3

I.    STATEMENT OF LEGAL PRINCIPLES[5]

The Court agrees that the statutory scheme governing petitioner's status is properly read to allow for his removal without further right of contest.  He is subject to a final order of deportation, he has been under an order of supervision that the statute provides a right to revoke if and when there was a change in circumstances, and receipt of a "travel document" that allowed for immediate deportation was such a change of circumstance.  Once the travel document had been obtained, the statutory scheme provides for the revocation of supervision and detention, as his deportation had become reasonably foreseeable.  All of this is correct.  But under the circumstances, the process by which it was done was nonetheless insufficient.  The manner in which deportation was and is to be effected here requires more.

The statutory scheme fails to account for the circumstances here; circumstances that petitioner shares with so many others who are similarly subject to final orders of deportation and have similarly lived under orders of supervision without incident for years.  In such circumstances, the Fifth Amendment's liberty and due process guarantees are North Stars that must guide our actions.  Yes, petitioner knew he was under a final order of deportation; yes, he had had numerous instances in which he had been heard by U.S. Immigration and Customs

---

[5] The Court has jurisdiction over this petition under 28 U.S.C. § 2241.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3), which "authorize[s] any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States'").

4

Enforcement ("ICE") and courts, arguing that he should be allowed to stay.[6] And

yes, that was all at an end. But if due process means anything at all, it means that

we must look at the totality of circumstances and determine whether we have dealt

fairly when we are depriving a person of the most essential aspects of life, liberty,

and family.[7] Here, any examination of those circumstances makes clear that

petitioner's liberty interest,[8] his interest in due process, required that we not pluck

him out of his life without a moment's notice, remove him from his family and

community without a moment's notice. The process that was due here is not

process that will allow him to stay indefinitely—those processes have been had.

The process that is due here is the allowance that he know and understand that the

time has come, that he must organize his affairs, and that he do so by a date

certain. That is what is due. That is the process required after a life lived among

us.[9]

---

[6] Mr. Ragbir was granted his first stay of removal by the ICE Field Office in New York City in December 2011. This stay was renewed three more times in February 2013, March 2014, and January 2016. His most recent stay renewal request was filed on November 16, 2017. Mr. Ragbir, his family, and his counsel had every reason to expect that the most recent stay would be granted. Mr. Ragbir had also been granted multiple, continuous work permits since his release pursuant to 8 U.S.C. § 1231(a)(7), which provides that work authorization can be issued when the removal of an individual is impossible as a result of travel document related issues or is "otherwise impracticable or contrary to the public interest."

[7] "These decisions underscore the truism that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. (D)ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (internal quotations and citations omitted).

[8] "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process Clause] protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

[9] In his first order of release, petitioner was placed under supervision. At that time, the order of release informed him "Once a travel document has been obtained, you will be required to surrender to ICE for removal. You will, at that time, be given an opportunity to prepare for an orderly departure."

5

Here, instead, the process we have employed has also been unnecessarily cruel. And those who are not subjected to such measures must be shocked by it, and find it unusual.[10] That is, that a man we have allowed to live among us for years, to build a family and participate in the life of the community, was detained, handcuffed, forcibly placed on an airplane, and today finds himself in a prison cell. All of this without any showing, or belief by ICE that there is any need to show, that he would not have left on his own if simply told to do so; there has been no showing or even intimation that he would have fled or hidden to avoid leaving as directed. And certainly there has been no showing that he has not conducted himself lawfully for years.[11] Taking such a man, and there are many such men and women like him, and subjecting him to what is rightfully understood as no different or better than penal detention, is certainly cruel. We as a country need and must not act so. The Constitution commands better.

## II.  CONCLUSION

Having carefully reviewed the submissions and entire record in this matter, and having heard the parties, the Court is convinced that it must grant the petition for habeas corpus. Constitutional principles of due process and the avoidance of

---

[10] "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.'" Miller v. Alabama, 567 U.S. 460, 469 (2012) (quoting Roper v. Simmons, 543 U.S. 551, 560 (2005)). The Court further notes the clear principle that deportation proceedings are "civil, not criminal" and are assumed to be "nonpunitive in purpose and effect." See Zadvydas, 533 U.S. at 690.

[11] The order of deportation is based upon a felony conviction for wire fraud that petitioner sustained in 2001. It is uncontested that since his release from custody, petitioner has lived a life of a redeemed man.

unnecessary cruelty here allow and provide for an orderly departure.  Petitioner is

entitled to the freedom to say goodbye.

Accordingly, it is hereby ORDERED that petitioner shall be immediately

released from custody.

SO ORDERED.

Dated:       New York, New York
             January 29, 2018

_____
KATHERINE B. FORREST
United States District Judge

7

# Exhibit 3

Department of Homeland Security

U.S. Immigration and Customs Enforcement

# Order of Supervision

File No:  **044 248 862**

Date:  **January 29, 2018**

Name:  RAGBIR, Ravidath Lawrence

On  **March 14, 2007**                                                    , you were ordered

(Date of final order)

☐ Excluded or deported pursuant to proceedings commenced prior to April 1, 1997.
☒ Removed pursuant to proceedings commenced on or after April 1, 1997.

Because the U.S. Immigration and Customs Enforcement has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions:

☒ That you appear in person at the time and place specified, upon each and every request of the U. S. Immigration and Customs Enforcement, for identification and for deportation or removal.

☒ That upon request of the U. S. Immigration and Customs Enforcement, you appear for medical or psychiatric examination at the expense of the United States Government.

☒ That you provide information under oath about your nationality, circumstances, habits, associations, and activities and such other information the U. S. Immigration and Customs Enforcement, considers appropriate.

☒ That you do not travel outside  **NY/NJ/CT**                                          for more than 48 hours without first

(Specify geographic limits, if any)

having notified the U. S. Immigration and Customs Enforcement office of the dates and places of such proposed travel.

☒ That you furnish written notice to the U. S. Immigration and Customs Enforcement office of any change of residence or employment within 48 hours of such change.

☒ That you report in person  **Saturday, February 10, 2018 at 10:00am**                to the Duty ATD Deportation Officer at:
26 Federal Plaza, 5th Floor, RM 5-537A New York, NY 10278                          unless you are granted written permission to report on another date.

☒ That you assist the U. S. Immigration and Customs Enforcement, in obtaining any necessary travel documents.

☐ Other:

☒ See attached sheet containing other specified conditions (Continue on separate sheet if required)

(Signature of ICE official)

Thomas Decker, Field Office Director/New York

(Print name and title of ICE official)

## Alien's Acknowledgment of Conditions of Release under an Order of Supervision

I hereby acknowledge that I have (read) (had interpreted and explained to me in the  (English  /   Spanish  language) the contents of this order, a copy of which has been given to me.  I understand that failure to comply with the terms of this order may subject me to a fine, detention, or prosecution.

(Signature of ICE official serving order)                    (Signature of alien)                    01-29-2018

Date

Form I-220B (Rev. 4/1/97)N

Department of Homeland Security
U.S. Immigration and Customs Enforcement

Continuation Page for Form:   **I-220B**

| Alien's Name | File Number | Date |
|---|---|---|
| RAGBIR, Ravidath Lawrence | 044 248 862 | January 29, 2018 |

*Alien's Signature*

Alien's Address

193 State Street, Apt #8

Brooklyn, NY 11201

917-566-4816

Alien's Telephone Number (if any)

**RIGHT INDEX PRINT**

PERSONAL REPORT RECORD

| DATE | OFFICER | COMMENT/CHANGES |
|---|---|---|
| | Next report date is Saturday, February 10, 2018 at 10:00 am for removal.. | |

| Signature | Title |
|---|---|
| | Deportation Officer |

Department of Homeland Security
U.S. Immigration and Customs Enforcement

**Order of Supervision-Addendum**

File No:   044 248 862
Date:   January 29, 2018

Name:   RAGBIR, Ravidath Lawrence

☒ That you do not associate with known gang members, criminal associates, or be associated with any such activity.

☐ That you register in a substance abuse program within 14 days and provide the U. S. Immigration and Customs Enforcement, with written proof of such within 30 days.  The proof must include the name, address, duration, and objectives of the program as well as the name of a program counselor.

☐ That you register in a sexual deviancy counseling program within 14 days and provide the U. S. Immigration and Customs Enforcement with written proof of such within 30 days.  You must provide the U. S. Immigration and Customs Enforcement with the name of the program, the address of the program, duration and objectives of the program as well as the name of a counselor.

☐ That you register as a sex offender, if applicable, within 7 days of being released, with the appropriate agency(s) and provide the U. S. Immigration and Customs Enforcement with written proof of such within 10 days.

☒ That you do not commit any crimes while on this Order of Supervision.

☐ That you report to any parole or probation officer as required within 5 business days and provide the U.S. Immigration and Customs Enforcement with written verification of the officers name, address, telephone number, and reporting requirements.

☐ That you continue to follow any prescribed doctors orders whether medical or psychological including taking prescribed medications.

☒ That you provide the U. S. Immigration and Customs Enforcement with written copies of requests to Embassies or Consulates requesting the issuance of a travel document.

☒ That you provide the U. S. Immigration and Customs Enforcement with written responses from the Embassy or Consulate regarding your request.

☒ Any violation of the above conditions will result in revocation of your employment authorization document.

☒ Any violation of these conditions may result in you being taken into the U. S. Immigration and Customs Enforcement custody and you being criminally prosecuted.

☐ Other.