

**R. Scott Thompson**
Partner

One Lowenstein Drive
Roseland, New Jersey 07068

**T**: 973 597 2532
**F**: 973 597 2533
**E**: sthompson@lowenstein.com

February 11, 2018

**VIA ECF**

Honorable Kevin McNulty, U.S.D.J.
United States District Court for the
District of New Jersey
Martin Luther King, Jr. Building
50 Walnut Street
Newark, New Jersey 07101

  Re: *Ragbir v. United States*, No. 2:17-cv-1256 (KM)
     Post-argument letter

Dear Judge McNulty,

  We respectfully write to respond to the Government's post-argument letter dated Feb. 9, 2018 (ECF 35) and to address a line of questions that was raised at argument regarding the constitutional implications of the Government's assertion that this Court has been stripped of its inherent authority to issue temporary stays of removal. As explained below, none of the cases cited by the Government in its letter--all but two of which were issued before the Supreme Court's opinion in *Nken v. Holder,* 556 U.S. 418 (2009)--explicitly hold that the INA overcomes a court's *inherent* authority to issue a *temporary* stay of removal. Such a holding would raise serious constitutional concerns, particularly where, as here, it is the Government's actions that have changed the status quo in this case.

  The Government concedes that federal courts have, as a general matter, the inherent authority to issue temporary stays incident to the underlying case at hand. However, it argues that the Immigration and Nationality Act ("INA"), 8 U.S.C. §1252(g), strips courts of this power. This argument not only misreads the statutory scheme, it also raises serious constitutional concerns under Article III and the First, Fifth, and Sixth Amendments.

  Federal courts' inherent authority to issue temporary stays *pendente lite* is grounded in their Article III authority to protect their jurisdiction and ensure that litigants have "meaningful access to the courts." *Bounds v. Smith*, 430 U.S. 817, 824 (1977). Meaningful access to the courts is squarely grounded in the guarantees of the Constitution, including the Due Process Clause and the First Amendment. *See BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002) (The "right of access to the courts is . . . [an] aspect of the [First Amendment] right to petition.") (internal citation omitted); *see also Procunier v. Martinez*, 416 U.S. 396, 419 (1974) (access to the courts is a corollary to "constitutional guarantee of due process of law"), *overruled on other*

Hon. Kevin McNulty, U.S.D.J.  February 11, 2018
Page 2

grounds, *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Johnson v. Avery,* 393 U.S. 483, 498 n.24 (1969) ("Reasonable access to the courts . . . is a right . . . secured by the Constitution . . . .") (citations omitted). When government action thwarts a litigant's ability to vindicate "basic constitutional rights," *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974), or "fundamental civil rights," *Bounds*, 430 U.S. at 827, courts are empowered to issue appropriate relief. *See also Lewis v. Casey*, 518 U.S. 343, 349-50, 354-55 (1996) (noting that it is "well-established" that courts are to "provide relief to claimants . . . who . . . will imminently suffer . . . actual harm"). As noted at argument, here it is the Government, not Mr. Ragbir, that seeks to change the status quo by abruptly deporting Mr. Ragbir despite this long-pending litigation before this Court. As observed by the Court during argument, Mr. Ragbir will clearly suffer irreparable harm if he is deported.

Moreover, in this case, which involves Mr. Ragbir's claims of fundamental errors at trial and sentencing, Mr. Ragbir's access to the courts is also protected by the Sixth Amendment. While a petition for a writ of coram nobis is a civil action, if granted, Mr. Ragbir is subject to re-trial and/or re-sentencing, where his Sixth Amendment rights attach. *See Kirby v. Illinois*, 406 U.S. 682, 688 (1972). Deporting Mr. Ragbir would thus undermine his Sixth Amendment rights.

These constitutional concerns must inform the interpretation of the statutory provision that the Government claims strips this Court of its inherent authority to protect the integrity of these proceedings. Congress can only limit a federal court's inherent authority by the "clearest command." *Califano v. Yamaski*, 422 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power  . . ."). Section 1252(g), the only provision of the INA cited by the Government, does not provide a "clear command," nor one that avoids the constitutional concerns noted above.

As an initial matter, the provisions of 8 U.S.C. § 1252 as a whole relate only to "judicial review of final orders of removal," § 1252(a)(1), and make no attempt to address courts' jurisdiction or inherent authority to address matters unrelated to the appeal process for final removal orders. Importantly, § 1252 does refer to stays of removal in § 1252(b)(3), where it states that filing a petition for review does not automatically stay a final order of removal. Had Congress sought to bar courts from issuing "stays" it would have explicitly done so, but it has not.

The natural place to have included such a bar would have been §1252(f), the only provision in §1252 that attempts to place some limitations on courts' authority to "enjoin" or "restrain" removal. Yet the Supreme Court has already held that a temporary stay of removal does not fall within the ambit of §1252(f). The Government's attempt to turn §1252(g)—which says nothing about a court's temporary authority to "enjoin" or "restrain" or "stay" removal— into a beefed up version of 1252(f) is an impermissible attempt to rewrite the statute.  Even if the Government's reading were a plausible interpretation of the statute—and it is not—it is, at a minimum, far from the "clearest command" necessary to limit this Court's inherent authority and cannot overcome the serious constitutional concerns addressed above.

Numerous federal district courts have issued temporary stays of removal pending consideration of cases where removal would result in irreparable harm to those individuals'



Hon. Kevin McNulty, U.S.D.J.  February 11, 2018
Page 3

access to courts, rejecting the arguments that the Government raises here. *See Ragbir v. Sessions*, No. 1:18-cv-236 (KBF) (S.D.N.Y. Jan. 29, 2018); *Ying Fong v. Ashcroft*, 317 F. Supp. 2d, 398, 404 (S.D.N.Y. 2004); *Ibrahim v. Acosta*, No. 17-cv-24574-GAYLES, 2018 WL582520 (S.D. Fla. Jan. 26, 2018); *Devitri v. Cronen*, No. 17-11842-PBS, 2017 WL 5707528 (D. Mass. Nov. 27, 2017); *Chhoeun v. Marin*, No. 8:17-cv-01898, 2018 WL 566821 (CJC) (C.D. Cal. Jan. 25, 2018); *Pangemanan v. Tsoukaris*, No. 18-1510 (ES) (D.N.J. Feb. 2, 2018). Notably, the vast majority of these cases post-date *Nken* and reflect the Supreme Court's understanding of the inherent authority that district courts have to issue temporary stays of removal *pendente lite.*

By contrast, the list of cases provided in the Government's most recent letter almost all pre-date *Nken*, make no reference to § 1252(g), and mistakenly treat a request for a stay as being the same as seeking review of the final order itself (a flawed argument the Government does not advance here), or as a request for permanent injunctive relief (the very mistake corrected by the Supreme Court in *Nken*). *Compare Nken*, 556 U.S. at 432 (holding that § 1252(f)(2) does not apply to temporary stays of removal and that stays are not coercive acts against the government) *with Tejada v. Cabral*, 424 F. Supp. 2d 296 (D. Mass 2006) (making no mention of 1252(g) and mischaracterizing petitioner's request as seeking review of a final order of removal under § 1252(a)(2)(C)); *Blumenberg v. Nash*, No. CIV.A. 05-5315 (NLH), 2006 WL 2352527 (D.N.J. Aug. 14, 2006) (making no mention of 1252(g)); *Eisa v. Immigration & Customs Enforcement*, No. 08–civ–6204, 2008 WL 4223618 (S.D.N.Y. Sept.11, 2008) (same) (citing *Tejada v. Cabral*, 424 F. Supp. 2d 296, 298 (D. Mass 2006)); *Wilfort v. Gonzales*, No. 07–0350–CG–C, 2007 WL 2220461, *2 (S.D. Ala. Jul. 27, 2007) (declining to stay removal based on pre-*Nken* notion that "stay relief is quintessential injunctive relief") (internal citations omitted).

Only two cases the Government cites post-date *Nken*, and both fail to address how the statutory provisions cited strip them of their inherent authority to issue temporary orders. *See Watson v. Stone*, No. 4:13-CV-480 CDL, 2013 WL 6072894 (M.D. Ga. Nov. 18, 2013); *Lage v. Chapdelaine*, No. 3:10-cv-1030, 2010 WL 4688820 (D. Conn. Nov. 10, 2010). Indeed, neither of these two cases relies on § 1252(g) at all, and instead rely on a flawed reading of § 1252 that the Government does not advance here. It does not appear that these courts were presented with arguments about inherent authority, and the courts make no mention of them, instead relying heavily on pre-*Nken* case law. To date, no court that we are aware of has explicitly held that the INA overcomes the court's inherent authority and the constitutional protections underlying such authority to issue a stay of removal where there is irreparable harm.



Hon. Kevin McNulty, U.S.D.J.                                          February 11, 2018
Page 4

Thank you for your consideration of this submission.

Respectfully submitted,

s/R. Scott Thompson

R. Scott Thompson

Alina Das, Esq.
Jessica Rofé, Esq.
Washington Square Legal Services
245 Sullivan Street, 5th Floor
New York, New York 10012
Co-counsel for Petitioner


cc:     Craig Carpento, United States Attorney (via ECF)
        David E. Dauenheimer, Assistant United States Attorney (via ECF)

