UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Chambers of
**Kevin McNulty**
United States District Judge

Frank R. Lautenberg Post Office
& U.S. Courthouse
2 Federal Square
Newark, New Jersey 07102
(973) 645-3493

## **LETTER OPINION**

April 19, 2018

*Via ECF*

Re: ***Ragbir v. United States***
    **Civil Action No. 17-1256 (KM)**

Dear Counsel:

Before this Court is a motion by respondent, the United States, for an order requiring former trial and appellate co-counsel of petitioner, Ravidath Ragbir, to disclose information and documents relating to his claims for ineffective assistance of counsel. (ECF No. 42.) Mr. Ragbir has filed a resonse (ECF No. 45), and the government has filed a reply. (ECF No. 46). The parties seek other, ancillary relief as well.

## BACKGROUND

Familiarity with the background of this matter is assumed. In February 2017, Mr. Ragbir filed his current petition for a writ of *coram nobis*, seeking to vacate a 2001 conviction for wire fraud and conspiracy or, in the alternative, to require resentencing. (Pet., ECF No. 1.) Among other arguments, Mr. Ragbir asserts that he received ineffective assistance of both trial and appellate counsel. (*See id.* ¶¶ 46–64.) Trial counsel Patricia Lee, he says, was ineffective in three ways: (1) she "misadvised him when she said that his conviction could lead to deportation, but did not explain that the immigration consequences of the conviction were dependent on the

outcome of the loss determination" (*id.* ¶¶ 48–52); (2) she failed to sufficiently investigate and negotiate loss calculations during Mr. Ragbir's sentencing (*id.* ¶¶ 53–58); and (3) she failed to retain a linguistics expert to evaluate the authenticity of a purported confession (*id.* ¶¶ 59–61). Appellate counsel, Anthony J. Fusco, Jr., he says, was ineffective in that he failed to raise a preserved objection to a jury instruction concerning the element of willful blindness. (*Id.* ¶¶ 62–64.) A hearing on the merits is set to occur before me on May 4, 2018. (*See* ECF Nos. 9, 28, 29.)

## THE CURRENT MOTION

The government now moves for an order requiring Mr. Ragbir's trial and appellate counsel "to disclose to the Government otherwise privileged or confidential communications that Mr. Ragbir's claims of ineffective assistance of counsel have placed in issue" and also "to provide [the government] with any documents bearing on Mr. Ragbir's ineffective assistance of counsel claims." (ECF No. 42 at 1.) The government indicates an intent to interview and otherwise seek information not only from Ms. Lee and Mr. Fusco, but also from two other lawyers: Alan L. Zegas, said to have served as co-counsel with Ms. Lee, and Michele Alcalde, said to have served as co-counsel with Mr. Fusco. (*See id.*) The government seeks this relief on the basis that raising an argument of ineffective assistance of counsel implicitly waives attorney-client privilege as to communications related to the claim. (*Id.* at 1–2.) It contends that Mr. Zegas was listed as lead attorney on Mr. Ragbir's trial docket and that other evidence suggests his active involvement in the litigation. (*Id.* at 2.) It also notes that Ms. Alcalde signed Mr. Ragbir's appellate brief and that an affidavit from Mr. Ragbir in support of his *coram nobis* petition mentions his discussions with both Mr. Fusco and Ms. Alcalde. (*Id.*) The government includes with its motion a proposed order that recites findings that Mr. Ragbir's claims have implicitly waived attorney-client privilege "with respect to communications with his attorneys reasonably

2

necessary to prove or disprove his claims" and ordering "that the Government may interview petitioner's former counsel, Patricia Lee, Alan L. Zegas, Anthony J. Fusco, Jr. and Michele Alcalde, Esqs., who shall provide all reasonably necessary information for the Government to respond to the ineffective assistance of counsel allegations raised by their former client." (ECF No. 42-7.)

Mr. Ragbir opposes this motion, asking "that the Court reject it entirely or, in the alternative, impose significant limitations on the scope of any waiver." (ECF No. 45 at 1.) He argues that his assertion of claims for ineffective assistance of counsel does not warrant a blanket waiver of attorney-client privilege, but rather a waiver narrowly limited to the scope necessary to ensure a fair proceeding. (*Id.* at 2–3.) He contends that document production by former counsel should be narrowly limited and first subject to in camera review, with an opportunity for his counsel to raise objections. (*Id.* at 3–4.) Mr. Ragbir asserts that, as he raised specific ineffective-assistance claims concerning only Ms. Lee and Mr. Fusco, the government should be limited to questioning only those two attorneys, and only on those specific topics. (*Id.* at 4–5.) He further asks that I bar the government from speaking with his former counsel except at the May 4 hearing or, in the alternative, that I require that his counsel be permitted to attend any interview. (*Id.* at 5–6.) Finally, Mr. Ragbir asks that I issue a protective order limiting the use of any information obtained from his former counsel to this proceeding. (*Id.* at 6–7.)

In reply, the government states that it agrees with Mr. Ragbir that attorney-client privilege and work-product immunity are waived only as to the specific topics raised in support of his claims for ineffective assistance of counsel. (ECF No. 46 at 1.) It contends, however, that it must be permitted to explore those topics not only with Ms. Lee and Mr. Fusco, but also with their co-counsel, Mr. Zegas and Ms. Alcalde. (*Id.* at 2.) The government argues that I "can and

3

should" require Mr. Ragbir's former counsel to appear for interviews with the government and produce relevant documents without in camera review. (*Id.*) The government contends that it should be able to interview Mr. Ragbir's former counsel outside the presence of his current counsel. (*Id.* at 3.) It posits that a protective order restricting the use of any information obtained is unnecessary. (*Id.*) It includes with its reply an amended proposed order, based on an order previously issued by Judge Jerome B. Simandle in a similar case, which would order Mr. Ragbir's former counsel to submit to interviews with the government concerning his ineffective-assistance-of-counsel claims, order each former counsel to produce copies of directly relevant documents, and order the government to produce the documents received to Mr. Ragbir's counsel. (ECF No. 46-1.)

## ANALYSIS

The parties raise several specific questions regarding both the scope of the applicable waiver of attorney-client privilege in this case and the proper procedure to be applied in obtaining discovery prior to the May 4, 2018 hearing. As to scope, the parties raise three distinct issues: (1) the substantive breadth of the privilege waiver, i.e., what topics may be explored with Mr. Ragbir's former counsel; (2) the particular attorneys to whom the privilege waiver applies; and (3) how the government may use any information it acquires via the privilege waiver.

### **Substantive Breadth of Waiver**

As to the first issue, the substantive breadth of the waiver, the parties now seem to agree. The United States Court of Appeals for the Third Circuit has generally held that parties implicitly waive attorney-client privilege when they place the legal representation directly in

issue.[1] Other circuits have held more specifically that when a petitioner "claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications."[2] I am persuaded by those authorities.

That implicit waiver of attorney-client privilege is limited, however, to attorney-client communications that are necessary for the resolution of the claims at hand.[3] Relevance in its broad sense under the Federal Rules of Evidence would be too lax a standard; mere relevance to the case "is *not* the standard for determining whether or not evidence should be protected from disclosure as privileged . . . ."[4]

Mr. Ragbir's counsel perhaps exaggerates in stating that the government's motion sought a "blanket waiver of the attorney-client privilege." In any case the government, in its reply, has sharpened its focus. The government agrees that Mr. Ragbir has waived the privilege only as to four specific topics that his ineffective-assistance claims have placed in issue:

1. trial counsel's alleged 'misadvice' to Mr. Ragbir 'regarding deportation consequences';

2. trial counsel's alleged 'failure to sufficiently investigate and negotiate loss at sentencing';

---

[1] *See Emmanouil v. Roggio*, 499 F. App'x 195, 201 (3d Cir. 2012); *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 212 (3d Cir. 1999); *Livingstone v. N. Belle Vernon Borough*, 91 F.3d 515, 537 (3d Cir. 1996); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994).

[2] *United States v. Pinson*, 584 F.3d 972, 977–78 (10th Cir. 2009); *see also, e.g., In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005); *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003); *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001); *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974).

[3] *See Pinson*, 584 F.3d at 978 ("[W]hen a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim."); *Bittaker*, 331 F.3d at 720 ("[T]he court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.").

[4] *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 864 (emphasis added).

5

3. trial counsel's alleged 'failure to consult a linguistic expert to challenge the accuracy of statements that law enforcement attributed to Mr. Ragbir at trial'; and

4. appellate counsel's 'failure to raise the error regarding the willful blindness jury instruction on appeal.'

(ECF No. 46 at 1 (quoting ECF No. 45 at 4–5).) I agree that Mr. Ragbir's waiver of the attorney-client privilege is limited in scope to information necessary to fairly resolve those four claims of ineffective assistance of counsel.[5]

## Attorneys to Whom the Waiver Applies

The defendant is of course the master of his petition, and he may limit the issues he wishes to assert. Mr. Ragbir also seeks, however, to limit the scope of the waiver to two of his attorneys, Ms. Lee and Mr. Fusco, and to avoid any disclosure of privileged information by co-counsel, Mr. Zegas and Ms. Alcalde.[6] I believe that the waiver, once in effect, cannot be cabined at the defendant's option; irrespective of the defendant's subjective wishes, the waiver will be deemed broad enough to permit a fair resolution of the issues the defendant has asserted. The defendant cannot, merely by his say-so, confine the waiver to particular attorneys.

An implied waiver of attorney-client privilege will not be construed generously, but it must be given enough latitude to ensure a fair presentation of the issues.[7] It follows that the

---

[5] To the extent that this proceeding may also implicate information protected by the distinct work-product privilege, I agree with the parties that implicit waiver of privilege generally applies equally to attorney-client privilege and work-product privilege. *See Bittaker*, 331 F.3d at 722 n.6 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981)); *Muhammad v. United States*, No. 15-6845, 2016 WL 1243617, at *1 (D.N.J. Mar. 28, 2016). Accordingly, the waiver discussed herein may be considered equally applicable to any assertion of work-product privilege.

[6] As to this limited issue, Mr. Ragbir does not cite any case law that is on point. The case he does cite does not discuss privilege at all. *See Bloomer v. United States*, 162 F.3d 187 (2d Cir. 1998) (holding, among other things, that the habeas petitioner's former counsel should have had an opportunity to refute ineffective-assistance claims).

[7] *See Pinson*, 584 F.3d at 978–79; *Lott*, 424 F.3d at 453; *Bittaker*, 331 F.3d at 720; *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995).

6

scope of the waiver is not at the defendant's option. "[L]itigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. 'The attorney-client privilege cannot at once be used as a shield and a sword.'"[8] Where a defendant waives the privilege by relying on advice of counsel, for example, the Third Circuit has warned of the "inherent risk" in allowing the defendant to define the parameters of the waiver; the defendant "should not be permitted to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery."[9]

Under *Strickland v. Washington*,[10] a party asserting a claim of ineffective assistance of counsel must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) prejudice, specifically, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[11] Both prongs potentially implicate the advice given to Mr. Ragbir by the other two attorneys, Mr. Zegas and Ms. Alcalde.

As for the first prong, deficient performance, Mr. Ragbir alleges either faulty or omitted advice, or else erroneous strategic choices. If advice were omitted by one attorney, but given by another, then the advice overall would not necessarily have been defective. If one appellate attorney did not consider whether to assert a particular issue, but co-counsel did, the overall

---

[8]  *Lott*, 424 F.3d at 454 (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).

[9]  *Glenmede*, 56 F.3d at 486.

[10]  466 U.S. 668 (1984).

[11]  *Id.* at 688, 693–94.

7

strategy might be found to be sound. Alternatively, co-counsel's reasoning at the time might shed light on the reasons for the advice or strategy that the defendant now criticizes.

It is the prejudice prong, however, that most clearly would require waiver of the attorney-client privilege even as to former co-counsel. Suppose, for example, that Ms. Lee had failed to advise Mr. Ragbir about the impact of the dollar amount of the fraud on his immigration status, and that this were found to constitute constitutionally ineffective assistance. Suppose further that co-counsel *did* give that advice. That might go a long way toward rebutting any showing of prejudice.

In short, Mr. Ragbir cannot confine the waiver simply by naming some attorneys but not others in his petition. Barring the government from exploring these issues would impair the fairness of the proceeding by depriving the court of evidence necessary to a decision on these claims—essentially allowing Mr. Ragbir to use the privilege impermissibly, as both sword and shield.[12]

I hold that Mr. Ragbir's waiver of attorney-client privilege extends to, but is not limited to, Ms. Lee and Mr. Fusco. It also extends to otherwise-privileged material and testimony of co-counsel, Mr. Zegas and Ms. Alcalde, to the extent they may bear on the four specific claims of ineffective assistance enumerated above.

---

[12] I do not, by the way, suggest bad faith here, nor do I jump ahead to the conclusion that Mr. Zegas and Ms. Alcalde possess information harmful or even relevant to Mr. Ragbir's petition. The waiver rule adopted by the court here, however, is designed with an eye to prevention of abuse. If the rule were to the contrary, a future petitioner might name just one of his prior co-counsel (perhaps the one who performed the least work or did not deal with the issue in question), and assert that he did not receive advice that was in fact provided by other counsel.

## Limitations on Future Use of Waived Materials

Next I consider suggested limits on the future use of information disclosed via the implicit waiver of attorney-client privilege. The government suggests that the subsequent use of any information obtained via the implicit waiver in this proceeding is unlikely. I agree. That practical reality, however, does not alter the legal issue.

As to the legal issue, I am persuaded by the thorough analysis of the Ninth Circuit in *Bittaker v. Woodford*.[13] Fairness and due process require an implied waiver in connection with this proceeding; that is not necessarily so, however, in relation to future proceedings. As to them, the fundamental concerns that justified the existence of the privilege remain potent. To put it another way, the correction of constitutional error in criminal proceedings should not disadvantage the petitioner in future proceedings.[14] (I assume *arguendo,* of course, that there will be future proceedings; should the challenge fail, there presumably would not be any further criminal proceedings and the issue would not arise.) And I further agree with the *Bittaker* Court that all will benefit, and that disputes may be minimized, if I rule on that issue now, despite its being somewhat contingent or speculative.[15]

Accordingly, I hold that the government will be barred from using any information that it obtains via Mr. Ragbir's implicit waiver of his attorney-client privilege in any potential retrial, resentencing, or other proceeding relating to the criminal charges originally asserted against Mr. Ragbir.

---

[13] *See Bittaker*, 331 F.3d at 722–28.

[14] *See id.* at 722–25.

[15] *Id.* at 721.

### Other Procedural Issues

The parties have also asked me to weigh in on a number of specific procedural questions: whether Mr. Ragbir's former counsel should be directed to appear for interviews with the government; whether the government is required to allow Mr. Ragbir's present counsel to be present for such interviews; how Mr. Ragbir's counsel should produce documents to the government; and whether pre-disclosure, in camera review should be required. By and large, the parties have not shown an adequate basis for an order concerning these points.

Mr. Ragbir's counsel urges that "[f]ormer counsel cannot be compelled to speak with the Government outside of court if they choose not to." (ECF No. 45 at 6) That may be so, but by the same token, Mr. Ragbir's former counsel cannot be *barred* from speaking with the government should they choose to do so (for example, in an effort to persuade the government that they possess no useful information and should not be called to testify at the hearing).

I am mindful, too, that these potential witnesses are members of the bar of this court who may be assumed to be aware of their obligations in relation to its fact finding process. While I perceive no basis to order them to appear for a meeting with the U.S. Attorney's Office, I see no reason that the government may not request that counsel submit to an interview or voluntarily produce appropriate documents. Experienced counsel should be capable of applying this ruling in good faith to preserve still-privileged material but disclose material as to which the privilege has been waived. In aid of that process, all may find it helpful to engage in informal dialogue.

Should Mr. Ragbir's former counsel decline to appear voluntarily, the government may issue subpoenas. I will direct that a copy of any such subpoena be concurrently served on the opposing party. Likewise, depositions may be noticed. If requested, I will enter an order expediting the schedule, allowing for short notice to accommodate the upcoming hearing date.

I will also, in part, adopt the government's proposal for document production. Former counsel (or other third-parties) may produce documents directly to the government, either voluntarily or under subpoena, consistent with their obligations under this ruling. The government shall provide copies of any documents received to Mr. Ragbir's counsel within five days of receipt, and no later than close of business on May 2, 2018. If a document contains both privileged material and non-privileged material (defined to include material as to which the privilege is waived, as described above), it shall be redacted. Genuine disputes may be submitted to the Court for review, but the Court will not, as requested, review all discovery in camera in advance of disclosure.

Finally, I will add, though it should not be necessary to do so, that the privilege belongs to Mr. Ragbir. He is directed to cooperate and communicate to his former attorneys to the extent necessary to release the material. Failure to do so may result in forfeiture of his claims.

## CONCLUSION

Based on the foregoing reasons, it will be ordered as follows:

1. Mr. Ragbir's claims of ineffective assistance of counsel waive the attorney-client privilege as to communications that are necessary to fairly resolve his four claims of ineffective assistance of counsel:

    a. trial counsel's allegedly erroneous advice to Mr. Ragbir regarding immigration consequences;

    b. trial counsel's alleged failure to sufficiently investigate and negotiate loss at sentencing;

    c. trial counsel's alleged failure to consult a linguistic expert to challenge the accuracy of statements attributed to Mr. Ragbir at trial; and

11

d. appellate counsel's failure to raise on appeal the alleged error regarding the willful blindness jury instruction;
2. The implicit waiver of attorney-client privilege is not limited to communications with the two attorneys named in Mr. Ragbir's petition, but extends to co-counsel, Mr. Zegas and Ms. Alcalde, as well.
3. The government may not use the otherwise-privileged materials disclosed pursuant to Mr. Ragbir's implicit privilege waiver in any potential retrial, resentencing, or other proceeding connected to the charges originally asserted against Mr. Ragbir.
4. The government may pursue voluntary disclosure of information from Mr. Ragbir's former counsel, consistent with the scope of the implicit waiver of attorney-client privilege, or in the alternative may use the procedures for obtaining such information provided by the Federal Rules.
5. The government may pursue voluntary disclosure of relevant documents from Mr. Ragbir's former counsel, consistent with the scope of the implicit waiver of attorney-client privilege, or may use the procedures for obtaining such disclosures provided by the Federal Rules. The government shall provide copies of any documents received from former counsel to Mr. Ragbir's present counsel within five days of receipt, but no later than close of business on May 2, 2018.
6. Former counsel shall withhold or redact privileged material not subject to the waiver as described above.
7. The request for in camera review of all materials is denied, but genuine disputes as to particular items may be submitted to the Court for review.

8. Mr. Ragbir, as the owner of the privilege, shall cooperate and direct his attorneys or former attorneys to comply.

An appropriate order follows.

*[signature]*
KEVIN MCNULTY
UNITED STATES DISTRICT JUDGE